Citation Nr: 21049969
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 20-06 246
DATE: August 13, 2021

ORDER

New and material evidence has been submitted, and the claim to reopen service connection for a right foot disability, to include right foot pain and/or right foot plantar fasciitis (right foot plantar fasciitis) is granted.

New and material evidence has been submitted, and the claim to reopen service connection for right foot pes planus is granted.

New and material evidence has been submitted, and the claim to reopen service connection for left foot pes planus is granted.

Service connection for pseudofolliculitis barbae is denied.

Service connection for a lumbosacral strain (lumbar spine disability) is denied.

REMANDED

The service connection claim for right foot plantar fasciitis is remanded. 

The service connection claim for right foot pes planus is remanded.

The service connection claim for left foot pes planus is remanded.

FINDINGS OF FACT

1. Evidence submitted since the last, September 2013 rating decision that denied service connection for right foot plantar fasciitis includes lay testimonies from the Veteran and his sister, which suggest that the Veteran had a related in-service injury, with continuing symptoms since his separation from service.

2. Evidence submitted since the last, September 2013 rating decision that denied service connection for right foot pes planus includes lay testimonies from the Veteran and his sister, which suggest that the Veteran had a related in-service injury, with continuing symptoms since his separation from service.

3. Evidence submitted since the last, September 2013 rating decision that denied service connection for left foot pes planus includes lay testimonies from the Veteran and his sister, which suggest that the Veteran had a related in-service injury, with continuing symptoms since his separation from service.

4. The Veteran does not have a current pseudofolliculitis barbae condition.

5. The evidence does not show that the Veteran's current lumbar strain is related to his service.

CONCLUSIONS OF LAW

1. The criteria for reopening service connection for right foot plantar fasciitis have been met. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 3.156.

2. The criteria for reopening service connection for right foot pes planus have been met. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 3.156.

3. The criteria for reopening service connection for left foot pes planus have been met. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 3.156.

4. The criteria for service connection for pseudofolliculitis barbae have not been met. 38 U.S.C. § 1131; 38 C.F.R. § 3.303.

5. The criteria for service connection for a lumbosacral strain (lumbar spine disability) have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Navy from February 1963 to September 1965, with additional periods of inactive duty for training (INACTDUTRA) and active duty for training (ACTDUTRA) in the United States Navy Reserve, from February 1965 to February 1969.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2018 rating decision of a Department of Veterans Affairs (VA), Veterans Benefits Administration, Regional Office.

In June 2021, the Veteran and his niece, B.B., testified at a virtual hearing before the undersigned Veterans Law Judge. A transcript of this hearing is of record.

New & Material Evidence to Reopen Right Foot & Bilateral Pes Planus Service Connection Claims

VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of a Veteran. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a); Hodge v. West, 155 F. 3d 1356 (Fed. Cir. 1998). New evidence is evidence not previously submitted to agency decision makers. 

Material evidence is evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

Right Foot Pain; Right Foot and Left Foot (Bilateral) Pes Planus

The Veteran's service connection claim for right foot plantar fasciitis was initially denied in a September 2010 rating decision because the Regional Office found that this condition neither occurred in, nor was caused by his active service. For these same reasons, the last time this claim was denied was in a September 2013 rating decision. Furthermore, the last time the Veteran's service connection claim for bilateral pes planus was denied was also in the September 2013 rating decision because the Regional Office found that there was no link between the Veteran's medical condition and his military service.

Following both September 2010 and September 2013 rating decisions, the Veteran did not perfect an appeal of these issues within the requisite time frame VA established for filing and/or perfecting an appeal. Therefore, both September 2010 and September 2013 rating decisions became final. 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.104.

Relevant to these claims, evidence received since the last, final September 2013 rating decision, includes and is not limited to, testimonies from the Veteran and his niece at his June 2021 virtual hearing. Specifically, for example, the Veteran testified that the date of the onset of his right foot plantar fascitis was during his active service when he injured his right foot while he was escalating a ladder, he shower shoes broke, and he fell down; and that he has had problems with the right foot ever since then. He also testified, through his representative, that he did not have flat feet when joined the Navy, and that while he was on active duty, he went through bootcamp and all the military training, wearing boots known as "BoonDockers." Additionally, his niece, B.B. testified that she spoke with the Veteran's sister and she confirmed that the Veteran was not diagnosed with flat feet at the time he enlisted in the Navy. She also testified that the Veteran has been going back and forth to a doctor to seek treatment for his foot; and that she takes him to his appointments. See June 2021 Virtual Hearing Transcript.

These pieces of evidence are new because they were not previously submitted or considered by VA. They are material because these testimonies constitute as evidence of service-related injuries that may be related to the Veteran's right foot plantar fasciitis and bilateral pes planus disabilities. Additionally, the new pieces of evidence constitute evidence of continuity of symptoms of the Veteran's right foot pain and/or plantar fasciitis and bilateral pes planus. Thus, these pieces of evidence serve as previously unestablished elements from the prior, September 2013 rating decision for right foot plantar fasciitis and bilateral pes planus. 

The Board recognizes that these additional pieces of evidence are presumed to be credible for the purpose of reopening the claim. Justus, 3 Vet. App. at 512 13. Therefore, these additional pieces of evidence, when considered in conjunction with the record as a whole, raise a reasonable possibility of substantiating the Veteran's claims. Thus, as new and material evidence has been received, the service connection claims for right foot plantar fasciitis and bilateral pes planus are reopened.

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in, or aggravated during service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. That determination requires a finding of a current disability that is related to an injury or disease in service. Service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d). 

Generally, to establish service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313(Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

1. Pseudofolliculitis Barbae

At his virtual hearing, the Veteran testified that in May 1963, during his active service, he developed a rash on his face, and that upon seeking medical treatment, his skin condition was attributed to "shaving." He stated that he continuously developed rashes whenever he shaved, from that time forward, up till the present time. See June 2021 Virtual Hearing Transcript.

While the Board acknowledges that the Veteran is competent to report about the symptoms and conditions that he observes, and despite his claim that he currently continues to have the skin rash whenever he shaves, he did not indicate that he is either taking over-the-counter medication to treat his rash, and/or that he is currently seeking treatment for this condition. In fact, the Veteran's niece, B.B. stated that to her knowledge, VA was not providing treatment for this condition, and that she never took him for treatment for this condition. See June 2021 Virtual Hearing Transcript. 

Nonetheless, given his assertions, as well as in-service evidence of a skin condition that may be related to pseudofolliculitis barbae, the Veteran was afforded a VA examination for skin diseases. In a December 2017 disability benefits questionnaire (DBQ) form, as well as a corresponding, December 2017 VA opinion, a VA examiner found that the Veteran did not currently have pseudofolliculitis barbae. He remarked, in pertinent part, that the Veteran's symptoms are only subjective; and that his examination was normal. See December 2017 DBQ. 

Although the VA examiner clarified that the Veteran had a skin condition which had its onset in 1973, and which is well healed, he diagnosed the Veteran with vitiligo. See December 2017 DBQ. However, this current disability is a separate, distinct skin condition that the Veteran has not claimed as service related in this appeal.

Additionally, and consistent with the findings from the December 2017 DBQ and December 2017 VA Opinion, post-service medical treatment records do not reflect a current diagnosis of pseudofolliculitis barbae, despite evidence of a related and/or similar in-service condition in a May 1963 medical record. 

Therefore, the Board finds that there is no evidence of a current pseudofolliculitis barbae condition. Thus, as there is no valid claim, due to the absence of proof of a current disability, service connection for pseudofolliculitis barbae must be denied. See Brammer v. Derwinski, 3 Vet. App. 223,225 (1992). 

2. Lumbar Spine Disability

At his June 2021 hearing, the Veteran testified that he injured his back while he was on active duty. Although he recalled that he used to paint on the ship where he served, and he injured his back. However, he was unable to explain how he hurt his back, as he stated that he does not remember much, and his niece, B.B. was unable to provide any details about his alleged in-service back injury. She explained that she was unsure as to whether he hurt his back when he fell down the ladder, but she confirmed that the Veteran has always had a back problem as long as she's known him, since childhood. 

Although the Veteran does not recall the particular circumstances that led to his in-service back injury, service treatment records (STRs) confirm that on one occasion, the Veteran was treated for muscle spasms after injuring his back. See March 1965 In-Service Medical Record. However, no other STRs show any evidence of follow-up complaints, treatment, and/or symptoms of a chronic back disability. Thus, the evidence suggests that the Veteran's in-service back injury resolved by the time he separated from active service later that year.

Similarly, and unlike his bilateral foot disabilities, post-service treatment records do not show any evidence of a chronic back condition or complaints. Although the Veteran's niece testified that the Veteran has had back problems since her childhood, she was not specific, with respect to a date, timeframe, and/or the amount of time that had elapsed between his separation from service and her initial observation, as a child, that the Veteran was suffering from back issues. But see VAMC Treatment Record, Noted as the Period of June 1996 to September 2013 (providing a list of the Veteran's active problems, which does not include any lumbar spine or back conditions). 

Nonetheless, the Veteran was afforded a VA examination for back conditions. In a December 2017 VA examination report (DBQ), a VA examiner diagnosed the Veteran with a lumbosacral strain (lumbar strain) disability. He also noted that the Veteran's lumbar strain was asymptomatic at this examination. Additionally, the VA examiner observed that the Veteran reported that his back issues began in 1963 when he joined the Navy, but he did not remember the exact incident that caused the back condition. He opined that the Veteran's lumbar strain was less likely than not (less than 50 percent probability) incurred in or caused by an in-service injury, event, or illness. As the rationale for this opinion, the VA examiner reasoned that there is no medical evidence of a back condition or chronic long-term treatment for a back condition in the Veteran's claims file.

Otherwise, the Veteran has not submitted any other evidence, such as, for example, a contrary, positive nexus opinion that establishes a correlation between his service and is current lumbar spine disability, buddy statements from fellow veterans about a chronic or recurring in-service back condition, private medical treatment records that show evidence of chronic or recurring back issues during his period service, or any other relevant evidence to establish a correlation between his active service and his current lumbar spine disability. Despite his apparent memory impairment, the Board, nonetheless, finds that the Veteran's lay statements about his in-service back injury are competent and credible because they are consistent and corroborated by his STRs. At the same time, however, his one-time in-service back injury is not sufficient enough to establish chronicity, especially given that the STRs do not reflect any follow up or recurring back complaints or treatment, which suggests that his one-time in-service back injury resolved by the time he separated from active service a few months later. Moreover, there is no evidence suggesting that he had arthritis of the spine at that time, nor was there any x-ray evidence of arthritis in the first post-service year. 

Therefore, the Board also finds that the preponderance of the evidence is against this claim, and thus, entitlement to service connection for a lumbar spine disability must be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

REASONS FOR REMAND

The Board regrets further delay, but finds that additional developments are necessary before it may render a decision on the remaining issues on appeal.

Right Foot Pain; Right Foot and Left Foot (Bilateral) Pes Planus 

At his hearing, the Veteran testified that while he was on active duty aboard the USS Shangri-La, he hurt his foot when he was going up a ladder, his shower shoes broke, and he fell down the ladder stairs. He reported that this was when he started having problems with the back of his heels, and that he has had problems with the right foot ever since this accident. See June 2021 Virtual Hearing Transcript.

The Veteran also testified, through his representative, that he did not have flat feet when joined the Navy, and that while he was on active duty, he went through bootcamp and all the military training, wearing "BoonDockers." Additionally, he asserted that he does not believe that his bilateral pes planus is a hereditary or congenital disability because it was discovered for the first time in 1967 while he was in military service. Additionally, his niece, B.B., testified that the Veteran's sister confirmed that the Veteran was not diagnosed with flat feet at the time he enlisted in the Navy. She also testified that for the past three or four years in which the Veteran has been living with her, she has been taking him back and forth to the doctor to treat his feet conditions. See June 2021 Virtual Hearing Transcript.

STRs corroborate the Veteran's and B.B.'s testimonies about the history of his right foot pain and bilateral pes planus. Particularly, for example, a January 1964 in-service medical treatment record confirms that the Veteran hurt his foot while walking down a ladder while he was on board the USS Shangri-La. Additionally, STRs also entail an annual, August 1967 report of medical examination which confirms the 1967 diagnosis of bilateral pes planus, although it is not identified as a congenital condition. However, none of the in-service medical treatment records, including this annual examination, provide any additional details about the onset or history of the Veteran's bilateral pes planus. Thus, the Veteran's STRs do not make it clear as to whether bilateral pes planus was diagnosed or incurred during a period of the Veteran's active duty or ACTDUTRA. At the very least, service personnel records suggests that the August 1967 annual examination was undertaken during a period of the Veteran's inactive service or INACTDUTRA, but at the same time, service personnel records also suggest that this August 1967 annual examination, and/or the onset and diagnosis of his pes planus was during a period that was contemporaneous with, or in close proximity to a period of the Veteran's ACTDUTRA service in June 1967, among other ACTDUTRA service periods in early 1967. 

Post-service treatment records also suggest that the Veteran has chronic bilateral foot disabilities. See e.g. January 2002 Physical Therapy Out-Patient Notes (noting that the Veteran presented with complaints of pain and weakness in the right foot, as well as heel pain, and indicated that he had not seen a doctor ever since he had been sick; and reflecting that the Veteran walked with "foot flat and 0 toe off."); see also May 2002 Orthopedics Consult Results (noting that the Veteran complained about pain in his right ankle and foot area); see too, June 2002 Prosthetics Lab Feet Note (noting that the Veteran was seen in connection with right foot pain, and that one metatarsal pad was placed on the 1st metatarsophalangeal joint (big toe joint), and that he was instructed about wearing prosthetic shoes, as usual); see too, September 2003 Physical Therapy Consult Note (reflecting a diagnosis of right plantar fasciitis; the Veteran reported that his chief complaint, at the time, that he had pain in the right foot and ankle, with pain also in the heel during ambulation; and that he was wearing orthotics for shoes); see too, October 2012 Physician Emergency Department Note (noting active problems, including painful foot/toe and congenital pes planus); see too, July 2013 Physician Emergency Department Note and July 2019 Primary Care Telephone Encounter Note, (listing foot pain, painful toe, and pes planus as active problems); see too, November 2019 Primary Care Note (noting that the Veteran has right foot pain and wears a brace); see too, February 2020 Orthotics Prosthetics Consult Note (reflecting that the Veteran wears ankle foot orthotic footwear).

Additionally, a VA Medical treatment note, which entails a hand-written note that indicates that the enumerated problem list was from June 1996 to September 2013, includes diagnoses of painful foot/toe and congenital pes planus. However, this problem list is silent on the onset of these disabilities, even though an onset date for other disabilities are noted. Although an October 2012 Physician Emergency Department Note lists active problems, to include a diagnosis of painful toe, with an onset date of October 2010, and congenital pes planus, with an onset date of March 2006, other older treatment records reflect diagnoses of painful toe and bilateral pes planus prior March 2006, as indicated above. Thus, post-service medical treatment record are not clear, and/or have not confirmed the actual date of onset for the Veteran's right foot plantar fasciitis/right foot pain and bilateral pes planus, outside of treatment records from the Veteran's STRs. Pertinently, it is not clear, from medical treatment records, how or why the Veteran's pes planus was identified as a congenital condition, even though the 1967 in-service annual examination did not indicate that his pes planus was a congenital condition. 

Thus, given that competent and credible lay statements from the Veteran and his niece, about in-service onset and post-service continuity of symptoms, are corroborated by STRs and post-service treatment records, a remand is required for a VA examination and opinion on the etiology of the Veteran's right foot plantar fasciitis and bilateral pes planus.

The matters are REMANDED for the following action:

1. Schedule the Veteran for a new VA examination for his right foot pain/plantar fasciitis and bilateral pes planus disabilities. The VA examiner must review the claims file and must note that review in the report. A copy of this REMAND must be made available to the VA examiner. The VA examiner must undertake the following:

a. Opine whether it is at least as likely as not (more than 50 percent probability) the Veteran's (a) right foot pain, and then (b) plantar fasciitis, was incurred in service; is the result of an in-service illness, injury, accident or event; and/or is otherwise related to his active service.

b. Also, opine whether (a) the right foot pes planus, and then (b) the left foot pes planus, was at least as likely as not incurred in service; is the result of an injury, illness, accident, or event in service; and/or is otherwise related to his active service.

c. The Board particularly advises the VA examiner that some of the Veteran's service treatment records may have been lost due to a fire. Thus, in rendering an opinion, the VA examiner should consider, as evidence, all lay statements from the Veteran and his niece, B.B., as well as lay statements from any other witnesses about onset, symptoms, and continuity of symptoms. 

d. In rendering an opinion, the VA examiner must particularly take note of the fact that although STRs reflect that an August 1967 annual examination noted that the Veteran had pes planus, this examination was undertaken immediately after intermittent periods of the Veteran's Navy Reserve service in ACTDUTRA (active duty for training) in early 1967, and not prior to his initial enlistment into service.

e. In considering all relevant medical evidence, especially including all in-service injuries related to right foot pain/plantar fasciitis and bilateral pes planus, please clarify and/or address the following medical evidence and/or inquiries:

i. A January 1964 in-service medical treatment record which indicates that the Veteran hurt his foot while walking down a ladder.

ii. Given the earliest evidence of bilateral pes planus in an annual August 1967 examination, and not in his February 1963 enlistment examination, please explain, with a clear rationale, whether the Veteran's bilateral pes planus is acquired, or a congenital/hereditary defect.

(Continued on the next page)

 

iii. The Veteran's statements from the June 2021 virtual hearing, in which he testified that on active duty, he went through bootcamp and all the military training, wearing "BoonDockers." Please explain, with a clear rationale, whether the Veteran's use of BoonDockers contributed to, and/or were a cause of the Veteran's bilateral pes planus.

f. A detailed explanation is requested for all opinions provided. If an opinion cannot be provided without resorting to speculation, provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be rendered.

 

 

M. Tenner

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board V-N. Pratt

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.